

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

### 14-4105 and 14-4106

---

Appeals from the September 5, 2014 Orders of Judge Juan R. Sanchez,

sitting by designation in the United States District Court for the Middle

District of Pennsylvania in 1:13-cv-02618 (14-4105) and 1:13-cv-03058 (14-

4106)

---

## PETITION TO BE HEARD EN BANC ON BOTH APPEALS

---

Stephen G. Conklin, pro se, IFP
c/o 22 Mairdale Street
Pittsburgh, PA. 15214
(717) 460-5450

Dated: July 5, 2015

## PETITION TO BE HEARD EN BANC ON APPEALS

Stephen G. Conklin, Appellant on two (2) appeals, docketed as 14-4105 (1:13-cv-02618) and 14-4106 (1:13-cv-03058) respectively, for reasons more fully set forth below, hereby Petitions this Court, for good cause, to dissolve the panel recently selected to hear 14-4105, and stay proceeding further therewith, so that both appeals, absent disqualified Justices, may be heard concurrently by the remainder of this Court, En Banc. Appellant further seeks to be heard in oral argument on both appeals.

### STATEMENT

Pursuant to 28 U.S.C. § 46 (c), and the Federal Rules of Appellate Procedure ("Rule") 35 et seq., en banc consideration is necessary to secure and/or otherwise maintain uniformity with this Court's prior decisions, in full accord with decisions enunciated by the United States Supreme Court; and, the proceedings on appeal(s) involves questions of exceptional importance.

What is of primary concern is public confidence in the independence and integrity of this Court in rendering decision(s) of exceptional importance that ultimately necessitates determining whether this Circuit is capable of policing itself and its subordinate districts for which this Circuit must supervise.

2

The foregoing is all the more applicable here, where, given the fact that all of the Appellees are well-known federal officials within this circuit, who, together with other such officials behind the scenes, have forged close personal relationships, frequently working in tandem with this Court; and as to the instant matter(s), have and continue to wield unbridled power(s), acting in an incestuously confederated effort to repeatedly harm both this Appellant and his close friend and former attorney, Don Bailey.

Thus, the initial question revolves around whether this Court's "selected" panel in 14-4105 (or hereafter in 14-4106) can, and/or will actually be objective, given who the Appellees are, free of all undue influences, partiality, bias or prejudice; and, whether any reasonable third party person, i.e., "man on the street" standard, knowing all of the facts and circumstances, could reasonably conclude that such undue influences, partiality, bias or prejudice do not exist in favor of Appellees. Appellant concludes they would not.

Some background facts are in order here. For the sake of brevity, each is presented in bulleted fashion; to wit, Appellant is prepared to further brief in detail and/or provide testimony before this Court, as to the veracity of each and every fact presented herein.

3

Direct Relationship of Appeals, underlying causes of action, and acts

of interference therewith, all of which fully countenance this Court hearing

both appeals concurrently, en banc.

- There are two (2) ostensibly separate appeals at issue here, that are derived from a common nucleus, that being, a state court issued writ of summons (CV-2013-2962-CV) directed against Yvette Kane, as a private party.

- Subsequently, Appellant's state issued writ was removed to federal court, via the U.S. Attorney's office, by AUSA [Appellee] Mark E. Morrison, and docketed as 1:13-cv-01531.

- This removal falsely recasts as the defendant, the United States of America.

- On or about July 8, 2013 Appellant timely filed a motion to remand for, inter alia, lack of jurisdiction.

- On July 13, 2013 Appellant served Appellee Morrison and Judge McKee with a safe harbor notice, demanding the case be remanded – this was particular more egregious, given the fact that as Chief Judge, McKee knew that prevailing circuit law specifically prohibited such removal.

- On August 27, 2013 the Hon. Timothy J. Savage, sitting by designation, issued a memorandum stating Appellant was correct, and ordered the case remanded the case back to state court because of a lack of removal jurisdiction. This represents the law of the case.

- On or about October 22, 2013 Appellant, by and through his friend and attorney, Don Bailey, filed a Bivens complaint (1:13-cv-02618) against the Appellees.

- The Bivens complaint quite clearly is directly related to Appellant's writ of summons and Appellee's subsequent removal, as it concisely addresses violations of Appellant's rights from the moment of the

removal (1531) up through and concluding with the August 27th remand for lack of jurisdiction.

- On or about October 23, 2013 Appellant received a ten-day notice of non pros from AUSA Morrison, still in his official capacity, for failure to have filed a complaint in state court.

- Unbeknownst to appellant at the time, on or about September 18, 2013 Appellee Morrison, under color, sought and obtained a Rule to file a complaint; but as later admitted, never served that rule on Appellant whilst attempting to obtain a non pros.

- In light of exigent circumstances, Appellant promptly filed an emergency motion and application for stay in state court.

- Appellant's emergency state court motion is directly related to Appellant's writ of summons, and subsequent removal and remand, insofar as it is all about acts committed by Morrison on behalf of Yvette Kane, following remand.

- On or about November 25, 2013 State Court Judge, Scott Evans, scheduled a hearing to be held on Appellant's motion on Monday, December 9, 2013.

- On date same, Judge McKee designated Judge Juan R. Sanchez to preside over Don Bailey's Bivens case, as filed on behalf of Appellant.

- This is so, even though it mysteriously never appears on the docket, the Bivens Complaint was originally assigned to Judge William H. Caldwell of the Middle District Court, evidence of which appears on Justia.com.

- November 25, 2013 is additionally important, as defying a modicum of coincidence, Judge Evans entered an order for a hearing on Appellant's emergency motion to be heard on Monday, December 9, 2013.

- Judge Evan's belated appearance, follows what appears from the dauphin county docket entries, as judge-shopping by Appellees, as 2 previous judges, namely Judges Jeannine Turgeon, and Bruce Bratton had originally been assigned to Appellant's October 31, 2013 emergency motion.

- Judge Sanchez has a history of animosity towards Don Bailey, who, defying mathematical odds, has frequently been "randomly-selected" to preside over cases involving Don Bailey all to the detriment and harm of Don Bailey and his clients.

- Upon information and belief, and per statement(s) made in open court, (Snyder et al. v. Kraus et al., No. 5:08-cv-05217 (PA.E.D. 2008) Judge Sanchez has gleefully acknowledged his close ties with Appellee Kane and others in the Middle District Court.

- Upon information and belief, following the Savage decision, coupled to the subsequent filing of a Bivens Complaint by Don Bailey, Appellee Kane either directly, or by instruction, specifically sought out the designation Judge Juan Sanchez, knowing her friend would provide the desired results, no matter how far a departure.

- On Friday, December 6, 2013 at approximately 4:28PM (2 minutes before closing) AUSA Butler on behalf of Appellees Morrison and Kane, removed Appellant's emergency motion to federal court, which was thereafter docketed as 1:13-cv-03058.

- On or about December 19, 2013 Judge McKee designated Judge Juan R. Sanchez to preside over the second removal.

- Although Judge Savage had originally been designated to hear 1531, both the Bivens and the removed emergency motion were directly related thereto, Judge McKee subsequently designated both the Bivens and state-emergency motion to Judge Juan R. Sanchez.

- Subsequently, Appellant once more timely filed a motion to remand and thereafter, following Appellees' response thereto, on March 10, 2014 filed a motion in reply.

6

- On August 13, 2014 Appellant filed a motion to recuse Judge Sanchez, for the inordinate and inexcusable delay that elapsed since both the Bivens action and the second removal were filed; and, further, that both cases were "related" cases that should have never been assigned to Judge Sanchez.

- On or about August 25, 2014 whilst preparing his brief in support of recusal, Appellant received a phone call from AUSA Kate Mershimer (now chief of the civil division) who informed him that a conference call had been ordered by Judge Sanchez for Tuesday, August 26, 2014.

- Appellant informed Ms. Mershimer that he not received any notice of this so-called conference call, and when queried about what the conference was about, Ms. Mershimer stated the conference call was about "scheduling a hearing on all outstanding motions."

- Later that day, Appellant was told by Don Bailey that he had received an e-mail and I believe a phone call as well, from Thomas Schmidt, private counsel for Yvette Kane concerning the conference call.

- Subsequently, Appellant contacted both Ms. Mershimer, and Mr. Schmidt to determine whether either objected with Don Bailey being in on the conference call – neither objected.

- On August 26, 2013 as the transcript evinces, Appellant participated in the telephone conference call under protest.

- During this so-called conference, Appellant specifically inquired whether the Court would allow Don Bailey to sit in, as he was on stand-by to do so.

- After bantering over whether Don Bailey was still an attorney, which, in the middle district he still was, both Mr. Schmidt and Ms. Mershimer lied as to whether he could participate.

- Notably throughout, Appellant objected to the conference, and repeatedly stated, inter alia, that Judge Sanchez was there to "fix" Appellant's case(s) against him.

- Nonetheless, as evidenced by the record, Judge Sanchez referred to Appellant's March 10, 2014 Reply motion, as presenting an "interesting and thorny" issue. The document speaks for itself-it presents unequivocally, that, inter alia, Appellees' second removal was time-barred.

- Curiously, insomuch as Appellant's reply presented an interesting and thorny issue, Judge Sanchez never sought any replies or further briefing on the issue; and, it is only more than five (5) months later, following Appellant's motion for recusal that suddenly, it is brought up.

- Near the conclusion of the conference call, Judge Sanchez sought submission of letter briefs from each of the parties on the issues raised within three days; to wit, Appellant, under protest, timely complied.

- Notably, the conference call had absolutely nothing to do with scheduling a hearing for purposes of resolving all outstanding motions.

- What the conference call was about was a concerted effort to lure Appellant into a trap, leading Appellant to believe Don Bailey would be in attendance, whilst intentionally separating Appellant from his friend and attorney.

- Moreover, upon information and belief, both Mr. Schmidt and AUSA Mershimer had ex parte communications in furtherance of this scheme. This, on its face seems readily evident by the fact that Mr. Schmidt contacts Don Bailey, and Ms. Mershimer (heretofore never involved) contacts Appellant, and both had no issue with Don Bailey being present for the conference.

- Appellant additionally believes, the intent of the abrupt notice of conference, together with submission of a letter brief, was to preclude Appellant from timely filing a brief in support of his motion to recuse; however, due to the conference and events surrounding it, in furtherance of a prima facie cause, Appellant was in the process of filing a new motion, with brief when:

- On September 5, 2014 Judge Sanchez by both order and opinion, inexplicably so intertwined both cases, as to further recognize their direct and inseparable nature of their relationship.

- On October 3, 2014 Appellant filed two appeals.

- On or about September 9, 2014 Appellant received a filing re-directed back to a state-court inmate from Judge Conaboy. Appellant later came to learn that the inmate's filing was actually on Appellant's docket, as if his own, and coinciding with a notice Appellant never received concerning the transcript.

- Appellant additionally learned that not received a copy of the August 22, 2014 telephone conference call order, he had also not received a copy of the August 26, 2014 transcripts, Judge Sanchez's September 5, 2014 orders, or a copy of either the Mr. Schmidt's or Ms. Mershimer's conference briefs.

- Appellant also learned that his conference brief was not docketed.

- On October 7, 2014 Appellant mailed a certified letter to the new chief Clerk of the Middle District Court, Maria Elkins.

- Upon information and belief, Judge Conner personally picked Maria Elkins to be the new Chief Clerk, replacing Mary D' Angela, who for as yet unexplained reasons, departed her post in close proximity to Judge Conner becoming Chief Judge.

- The Clerk's office replied on October 17, 2014, apologizing for the lack of notices and the posting of the inmate's filing as wrong document. In addition, they acknowledged that my letter brief had not been docketed, but after consulting with [judge Sanchez] chambers, received a copy thereof, indicative of the fact that Judge Sanchez had control thereof.

- On or about this same time, Appellant received notice from this Circuit's Clerk's office, stating, without explaining more, that there "appears to be a possible jurisdictional defect" with respect to

Appellant's 14-4106 appeal. Appellant was directed to file something in opposition thereto.

- On or about November 7, 2014 Appellant personally filed in the Clerk's office of the Third Circuit, his opposition to dismiss his appeal for possible jurisdictional defect.

- For more than five months, despite repeated inquiries into the status of 14-4106, Appellant's possible jurisdictional defect issue was never addressed by a merits panel or otherwise.

- That is, until on or about April 10, 2015 Appellant sent a letter to the Department of Justice, concerning, inter alia, the irregularities involved and the inordinate delay incurred by Appellant in being able to brief his 14-4106 appeal. A copy of this letter was forwarded to the Chairman and Ranking member of both the House and Senate judiciary committees.

- Within five days of the DOJ's acknowledged receipt, on mail dated April 21, 2015 Appellant subsequently received notice from this Court's Clerk, stating "Upon further consideration, it appears it would not be appropriate at this time to submit this appeal to a panel of the Court to consider dismissal for lack of appellate jurisdiction...".

- Whilst admittedly never making a determination of the jurisdictional issue, a brief schedule was presented.

- No explanation has ever been forthcoming as to what the possible jurisdictional defect was, or why, it was not previously submitted to a panel for determination.

- Appellant firmly believes that this inordinate delay of over five months, was a deliberate tactic to put as much time and distance between Appellant's appeals of 14-4105 and 14-4106, to preclude the import/effect of their inter-relatedness if they were to actually be briefed and heard together.

- Meanwhile, in the interim, in as motion filed by AUSA Butler, dated February 27, 2015 Appellant first learned that on February 6, 2015 a

single oral request for an extension of time to file Appellee briefs was granted; and, of equal date, Appellant subsequently received a copy of Appellee Kane's brief.

- Neither Appellee Kane or AUSA Butler made any attempt to contact Appellant, concerning the February 6th event; nor, did either, serve notice on Appellant as an non-ECF user, as required by rule.

- More importantly, Appellant learned that only a single request for an oral extension of time was ever requested – and that being via Christina Garber who works for the U.S. Attorney's office.

- Appellee Kane, who is represented by separate counsel, never made such a request.

- Additionally, the brief submitted by Appellee Kane was in non-compliance, and per order dated March 6, 2015, Appellee had until March 11, 2015 to comply. Appellee Kane filed what ostensibly appears as a second amended brief, on March 12, 2015 – one day beyond the Court's compliance order.

- On or about March 16, 2015 sent a letter to this Clerk's office, seeking copies of his dockets, and an explanation as to why Appellee Kane was granted an extension of time when no such request was made by her counsel.

- On letter dated March 23, 2015 the Clerk's office replied, that the "records team" would be in contact (to date, they never have); and in attempting to explain Appellee Kane's untimely filing(s), side-stepped the issue, offering no real explanation at all.

- Accordingly, on or about March 27, 2015 Appellant filed a motion to strike Appellee Kane's brief as untimely.

- Once more, unbeknownst to Appellant, on or about April 7, 2015 Appellee Kane filed response to Appellant's motion to strike, but never served that response on Appellant.

- On June 1, 2015 Appellant once again, in writing, informed the Clerk that once more Appellee Kane has failed to notice Appellant, noting that it is an ongoing pattern.

- With respect to all of the immediate above, just as Appellant firmly believes that docket conjuring occurred in the district Court Clerk's office, so too, Appellant believes that this Clerk's office has not only withheld docketing activity, but equally, has exhibited an undue preference towards Appellees, in consideration of their influences.
- With respect to the motion to strike, Appellant believes this issue yet remains unresolved and outstanding.

Pursuant to Rule(s) 35(b)(1)(A) and (B):

**(A). A Panel decision is most likely to conflict with [a] decision[s] of the United States Supreme Court, and/or this Court.**
Backdrop

- Appellee Kane harbors a personal animus against both this Appellant and Don Bailey, each for having individually exercised their inherent rights to petition for redress, and/or on behalf of Don Bailey's clients.

- Appellee Kane is equally responsible for working in a concerted effort to deprive Appellant's rights with her close friends and others, including, but not limited to, Theodore A. McKee, Juan R. Sanchez, Appellees Peter J. Smith, Mark E. Morrison, AUSA Michael Butler, Thomas B. Schmidt III, as private counsel, and Judge Christopher C. Conner, the latter who spearheaded the efforts to get "Don Bailey".

- On or about February 2011, Appellee Kane, together with Judge Conner, (and later, after inflicting additional damage on Don Bailey) Judge John E. Jones III recused themselves from all of Don Bailey's cases.

- On or about April 4, 2011 Appellee Kane recused herself from Appellant's case in 1:10-cv-2501, where after, she, as then-chief judge, openly and personally attacked Appellant, without just cause, denying him his fundamental rights, and further, in retaliatory fashion, casting Appellant in a false light.

- Appellee Kane is, upon information and belief, further responsible for having Appellant placed on at least one [derogatory] list in the Marshal's office, as admitted by a Marshal who detained him on or about September 27, 2011; and further, having him under surveillance, and moreover, subject to a drop-down box, as Don Bailey long has been, as to monitor his activities involving the court.

- Judge Conner harbors a personal and seething animus towards both this Appellant and Don Bailey.

- Judge Conner actively sought to maliciously malign Don Bailey by spearheading his suspension from the practice of law, which ultimately resulted in Appellant's loss of choice of counsel.

- This active effort began with Appellant's case in 1:05-cv-1707, which was filed by Don Bailey, during the course of which, on or about May 16, 2006, Judge Conner issued a memorandum that exhibited what Appellant believed, and three additional attorneys concurred with, all before Don Bailey ever saw it, that Judge Conner, at minimum, harbored racial-insensitivity, if not racial animus.

- Appellant subsequently examined statements made in court documents filed by Judge Conner, such as *Shultz v. Wilson*, (citation omitted) and others, together with Appellant's personal contact with a former renter of Judge Conner, namely, Gisela Grimmel, and has concluded that Judge Conner indeed harbors a distinct racial animus.

- Judge Conner openly perjured himself during the August 11-12th 2012 disciplinary inquisition proceedings, where, *inter alia*, he stated he never filed a complaint against Don Bailey, where, the facts in evidence clearly show he did.

- Appellant was openly and viciously attacked by a tipstaff, Robert Snook, during his testimony about Judge Conner in the disciplinary inquisition, which was clear intended to foreclose further testimony.

- Upon information and belief, and as further supported by the record, Mr. Snook was previously instructed (pre-arranged) to interfere with

Appellant's testimony, particularly where it concerned Judge Conner; as further pre-arranged by Mr. Snook's statement about the two policemen in the back of the room were there for me.

- Upon information and belief, before and during these material times, counsel for Judge Conner, namely, David Fine, was seated at the disciplinary counsel's table, along-side, disciplinary counsel Robert Foster, and with acquiescence of both Mr. Foster's and Brian Cali, chair of the proceedings, Mr. Fine was allowed to raise objections and/or otherwise interrupt the proceedings.

Instant Matters

- Appellant firmly believes that this Court's chief Judge, Theodore A. McKee is intricately involved in aiding Appellee Kane and her government attorney friends, to the detriment of Appellant.

- On July 13, 2013 Judge McKee was served a safe harbor notice as it pertained to 1:13-cv-01531, for his role in having designated the removal of Appellant's state court issued writ to anyone, given the fact it was abundantly clear, by circuit law, no jurisdiction existed for such removal. At this point, Mssr. McKee should have disqualified himself from proceeding any further.

- Nonetheless, he did proceed by subsequently and in an orchestrated fashion, designating Juan R. Sanchez to preside, first, over the Bivens action filed by Don Bailey, and later, over the second removal filed by AUSA Butler on behalf of Appellees.

- Judge McKee knew that both of these cases were directly related to a case that already had been decided by his first designate, Judge Timothy J. Savage, but because the results desired by the Appellees was not forthcoming, chose Judge Sanchez, most likely at the behest of Appellee Kane, who is close to him, and equally knowing he is an antagonist towards Don Bailey that is most likely to get the results Appellees seek.

- The two active justices on panel, namely Mssrs. Jordan and Chagares, are both former AUSA's; Jordan having most served most recently as Chief of the Civil Division for the Delaware District – the same position Appellee Morrison held in the Middle District of PA.

- Upon information and belief, Judge Jordan is a close friend of Judge McKee; and, despite this Court's IOP at 1.1, Appellant contends that Judge Jordan, and possibly Judge Chagares were hand-picked by Judge McKee to irreparably tilt the tables in favor of the Appellees.

- Appellees, Peter J. Smith and Mark E. Morrison, are the U.S. Attorney and AUSA, respectively, for the Middle District.

- Given all of the other sordid circumstances involved herewith, Appellant has ever reason to firmly believe that both Mssr.'s Chagares and Jordan will do everything they can to find in favor of said Appellee's, not only because of a certain camaraderie, but equally, it is fully expected of them to deliver.

- Accordingly, if for no other reason, for the sake of the appearance of justice, Appellant will be seeking by separate motion the disqualifications of Judges Theodore A. McKee, Kent A. Jordan, and Michael A. Chagares from any further involvement in Appellant's appeals.

In light of all of the foregoing, Appellant is concerned by the panel designation in 14-4105 that upon submission of the briefs on Monday, July 6, 2015 will determine the merits of Appellant's appeal. Appellant believes the panel selected was hand-picked in furtherance of covering-up the wrongs committed by Appellees. That is to say, the reach and power of the Appellees seemingly knows no bounds. Appellant recognizes that whatever this panel decides, will have a binding effect on any subsequent panel, and if for no other reason than that alone, neither of Appellant's appeals should be hidden under a rock, or, [under] a panel in this case, but should, for the sake of the appearance of justice, be heard concurrently by this Court, en banc.

**(B). The proceedings on appeal(s) involve one or more questions of exceptional importance.**

As previously stated, given the nature of Appellant's appeals, and the Appellees involved, there is a question as to whether this Court's selected panel can, without undue influences, partiality, bias or prejudice, objective render an opinion. The mere appearance of partiality should be sufficient enough to warrant having Appellant's Appeals heard concurrently by this court, en banc. No less than Public confidence in the independence and integrity of this Court is at stake.

Wherefore, in consideration of all of the foregoing, Appellant respectfully requests that this Court, dissolve the 14-4105 panel and stay any further proceedings therewith, so that both appeals, absent disqualified Justices, may be heard concurrently by the remainder of this Court, En Banc. Appellant further seeks to be heard in oral argument on both appeals.

In the Interest of Justice Served.

Respectfully Submitted,

Stephen G. Conklin
c/o 22 Mairdale Street
Pittsburgh, PA. 15214

CERTIFICATE OF SERVICE

I, Stephen G. Conklin, appellant, do hereby certify this 5th day of July,

2015 that I caused to be served an original foregoing motion to be

heard en banc on the Court by personal delivery, and a true and

correct copy thereafter, by First Class, U.S. Mail, postage prepaid,

upon the following parties:

AUSA Michael Butler                 Thomas B. Schmidt III, Esq.
c/o Ronald Reagan Fed. Bldg.        c/o Pepper Hamilton, LLP
228 Walnut St., Suite 220           100 Market St., Suite 200
P.O. Box 11754                      P.O. Box 1181
Harrisburg, Pa. 17108-1754          Harrisburg, Pa. 17108-1181


_____
Stephen G. Conklin
c/o 22 Mairdale Street
Pittsburgh, Pa. 15214

17

2015 JUL -6  A 12: 03

USDC-EDPA
REC'D CLERK

Stephen G. Conklin
℅ 22 Mairdale Street
Pittsburgh, Pa. 15214



Clerk of Courts
United States Court of Appeals for the Third circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA. 19106

