RECEIVED
AUG 1 1 2015
U.S.C.A. 3rd. CIR

2015 JUL 13 PM 11: 39
METROG.COM
USDC-EDPA
CLERK

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

### No. 14-4106

---

Stephen G. Conklin, Pro Se

Appellant

v.

Yvette Kane, et al.,

Appellees

---

## BRIEF OF APPELLANT

---

Appeal from the September 5, 2014 Order of Judge Juan R. Sanchez, sitting

by designation in the United States District Court for the Middle District of

Pennsylvania, in Case No. 1:13-CV-03058

---

Submitted by:

/s/Stephen G. Conklin, pro se
c/o 22 Mairdale Street
Pittsburgh, Pa. 15214
(717) 460-5450

July 10, 2015

i.

## CORPORATE DISCLOSURE STATEMENT

I, Stephen G. Conklin, Pro se, do hereby certify under penalty of perjury that

there is no corporate interest implicated in this or any related case in which

he is a party.

Stephen G. Conklin, Pro se/IFP

ii.
## TABLE OF CONTENTS

Corporate Disclosure Statement…………………………………….i.

Table of Contents……………………………………………...ii.

Table of Authorities……………………………………...iii-

Introductory…………………………………………………1

Statement of Jurisdiction…………………………………….2-4

Statement of Issues Presented for Review………………………..4

Statement of Related Cases……………………………………5-7

Statement of the Case………………………………..................7-14

     A. Relevant Procedural History……………………………7-13

     B. Relevant Factual History…………………………….13-14

Summary of the Argument………………………………..14-15

Standard of Review…………………………………………16

Argument………………………………………………17-41

Conclusion……………………………………………...41

Certification of Bar Membership…………………………….iv.

Certification of Word Count…………………………………..iv.

Certification of Document……………………………………..iv.

Certificate of Service…………………………………………..v.

iii.

# TABLE OF CITATIONS

*Cases*                                                                *Page(s)*

*Alexander v. Primerica Holdings, Inc.*,
10 F.3d 155, 157, 165 (3d Cir. 1993)……………………………32

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)……………16, 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)………16

*Feidt v. Owens Corning Fiberglass Corp.*,
153 F. 3d 124, 127 (3d Cir. 1998)…………………………………19

*Foster v. Chesapeake Ins. Co.*,
933 F. 2d 1207, 1210-11 (3d Cir. 1991)…………………………..3

*Hayes v. Wal-Mart Stores, Inc.*,
725 F.3d 349, 354 (3d Cir. 2013)…………………………………16

*Home Placement Serv. Inc. v. Providence Journal Co.*,
739 F. 2d 671, 676 (1st Cir. 1984)…………………………...37

*In re Jaritz Industries, Ltd.*, 151 F. 3d 93, 96 (3d Cir. 1998)……..23

*In re Prudential Ins. Co. of America Sales Practices Litigation*,
148 F.3d 283, 343 (3d Cir. 1998)…………………………………37

*Jefferson County v. Acker*, 527 U.S. 423 (1999)…………………20

*Lambert Run Coal Co. v. Baltimore & O.R. Co.*,
258 U.S. 377, 382 (1922)……………………………………...18

*LaSalle National Bank v. First Connecticut Holding*,
287 F. 3d 279 (3d. Cir. 2002)………………………………...33

*Lazorko v. Pennsylvania Hosp.*, 237 F. 3d 242 (3dCir. 2000)…….23

*Liljeberg v. Health Services Acquisition Corp.*,
486 U.S. 847 (1988)………………………………………………32

*Maryland v. Soper (No 1)*, 270 U.S. 9, 33 (1926)....................20

*Massachusetts School of Law at Andover, Inc.*
*American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)...........37

*Mesa v. California*, 488 U.S. 121 (1989)...............................19,20

*Moran v. Clark*, 296 F. 3d 638, 648 (8th cir. 2002)....................37

*New Jersey v. Merrill Lynch & Co.*,
640 F. 3d 545, 547 (3d Cir. 2011)........................................3

*Papasan v. Allain*, 478 U.S. 265, 286 (1886)..........................16

*Phillips v. County of Allegheny*, 525 F. 3d 224, 230
(3d Cir 2008)...................................................................

*Potashnick v. Port city Constr. Co.*,
609 F. 2d 1101, 1111 (5th Cir. 1980)..................................38

*Thermtron Products, Inc. v. Hermansdorfer*,
423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976).................3

*Trans Penn Wax Corp. v. McCandless*,
50 F. 3d 217, 225 (3d Cir. 1995).......................................18

*United States v. Lee*, 106 U.S. 196 (1882)............................1

*Willingham v. Morgan*,
395 U.S. 402, 409, 89 S.Ct. 1813, 1817, 23 L.Ed 2d 396 (1969)...19,20

*Willy v. Coastal Corp.*,
503 U.S. 131, 139, 112 S.Ct. 1076, 117, L.Ed. 2d (1992)...........23

**Statutes**                                                    ***Page(s)***

28 U.S.C. § 455....................................................32, 37

28 U.S.C. § 471....................................................33

28 U.S.C. § 1291…………………………………………………..3,4

28 U.S.C. § 1331…………………………………………………..2

28 U.S.C. § 1331…………………………………………………..2

28 U.S.C. § 1442(a)…………………………………………2,10,19-20,25-26, 27

28 U.S.C. § 1442(d)(1)…………………………………………,…………2,4, 25

28 U.S.C. § 1446(g)…………………………………:……………2, 25

28 U.S.C. § 1447(c)…………………………………………………..3,17

28 U.S.C. § 1447(d)…………………………………………………..3,4

| *Rules* | *Page(s)* |
|---|---|

Fed.R.Civ.P.1……………………………………………………… 33

Fed.R.Civ.P. 16…………………………………………………..35

Fed. R.Civ.P. 26………………………………………………35, 36

Pa.R.Civ.P 1007……………………………………,…:…………7

iv.
## CERTIFICATIONS

### A. BAR MEMBERSHIP

Appellant, having filed this appeal pro se, and under informa pauperis,

hereby certifies he is not a member of this or any Bar.

/s/Stephen G. Conklin

### B. WORD COUNT

Appellant hereby certifies the word count of this brief is 9,059.

/s/Stephen G. Conklin

### C. DOCUMENT

Appellant hereby certifies this document is free of virus, having

submitted the foregoing via hard copies.

/s/Stephen G. Conklin

## I. INTRODUCTORY

In *United States v. Lee*, 106, U.S. 196 (1882) the Supreme Court

stated that:

> "No man [or woman] in this country is so high that he [or she] is
> above the law. No officer of the law may set that law at defiance with
> impunity. All the officers of the government, from the highest to the
> lowest, are creatures of the law, and are bound to obey it." *Id* at 220.

Is this Circuit capable of policing the District Court's it supervises?

"Don't fear the law, fear the judge"[1]

"The germ of destruction of our nation is in the power of the judiciary, an
irresponsible body – working like gravity by night and by day, gaining a
little today and a little tomorrow, and advancing its noiseless step like a thief
over the field of jurisdiction, until all shall render powerless the checks of
one branch over the other and will become as venal and oppressive as the
government from which we separated." (Thomas Jefferson)

How prophetic. Whereas, it has been said over the ages in one form or

another that, "*Power corrupts; absolute power corrupts absolutely*", it may

be better said that: ***"Power in and of itself does not necessarily corrupt, it is***

***the immunity from accountability for the [ab]use of power that corrupts;***

***always."***

---

[1] Alexander Solzhenitsyn – Gulag Archipelago

## II. STATEMENT OF JURISDICTION

On October 3, 2014 Conklin timely filed two appeals [App. 3-4] from two orders, dated September 5, 2014 in Case No. 1:13-CV-03058 and 1:13-CV-02168, respectively; coupled to, as applicable, memorandum, opinion and/or footnotes appertaining thereto, [App. 5-21/A22-24] issued by Judge Juan R. Sanchez; sitting by designation in the United States District Court for the Middle District of Pennsylvania, by order(s) emanating from this Court's Chief Judge, Theodore A. McKee. [App.26 Doc 2 & A30 Doc. 3]

The basis of the District Court's presumed jurisdiction, derive from the jurisdictional statement(s) contained in Appellee Morrison's [untimely] December 6, 2013 Notice of Removal [App. 262-278] of Appellant's Emergency Motion, filed on October 31, 2013 in State Court under docket 2013 CV 2962 CV [A125-139]; that being, removal was effected pursuant to 28 U.S.C. § 1331 (Federal Question), thereby, clamant of removal under 28 U.S.C. §§ 1442(a)(1), 1442(d)(1) and 1446(g).

For reasons yet unknown, the Court's jurisdiction was complicated via letter of this Court's Clerk, indicating, [without further explanation] this appeal may be adversely subjected to *"possible dismissal due to a jurisdictional defect"*. App.231.

As directed, Appellant filed his Opposition to Dismissal of Appeal, [4106] setting forth, *inter alia*, the basis of this Court's Appellant jurisdiction, per 28 U.S.C. §§ 1291 and 1447(d). Notably, no brief(s) were filed in support of dismissal by opposing counsel(s). Though no jurisdictional determination has yet been made. Conklin provides the following, in addition and/or in support of Conklin's opposition to dismiss.

Generally, an order "remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise" 28 U.S.C. § 1447(d).

However, there are exception(s) to the jurisdictional bar of this rule when the remand is not based on the reasons set forth in 28 U.S.C. § 1447(c). See, e.g., *New Jersey v. Merrill Lynch & Co.*, 640 F.3d 545, 547 (3d Cir. 2011) (citing *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1210–11 (3d Cir. 1991)); See also, *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), (holding that an order remanding a case for reasons *not* mentioned in the statute governing removal upon remand, 28 U.S.C. § 1447(c), is reviewable.)

Notably, it was Conklin who timely raised both a jurisdictional and procedural defect in his motion to remand, which was summarily denied by Judge Sanchez, but subsequently, without any implication of § 1447(c), the District Court remanded the case *after* gutting the state court proceeding.

3

Pursuant to the Removal Clarification Act of 2011, the jurisdictional bar

of of 28 U.S.C. § 1442(d) was removed. Section 1442(d) states:

> An order remanding a case to the State Court from which it was removed is not reviewable on appeal or otherwise, *except* that an order remanding a case to the State Court from which it was removed pursuant to section **1442** or 1443 of this title ***shall be reviewable by appeal or otherwise***.

28 U.S.C. § 1447(d) makes no distinction between movant or non-

movant with respect to taking an "appeal or otherwise" pursuant to Section

1442; nor, should this Court interpret contrarily, where the statutes are un-

ambiguous. Accordingly, this Court has clear statutory authority for

assuming jurisdiction under 28 U.S.C. § 1291.

## III. STATEMENT OF ISSUES PRESENTED FOR REVIEW

A. Whether the Sanchez Court ever had Jurisdiction to entertain 1:13-cv-03058

Suggested Answer:        No

B. Whether the Sanchez Court erred as a Matter of Law

Suggested Answer:        Yes

C. Whether the Sanchez Court should have recused/Disqualified itself

Suggested Answer:        Yes

IV.   STATEMENT OF RELATED CASES

This case has not previously been before this Court. However, one would have to be blind not to recognize the wholly inter-relatedness of this appeal under 14-4106, as coupled with 14-4105 – the latter, fully briefed and currently before this Court.

The foregoing appeals derive from a common nucleus, the genesis of which involves a state court writ of summons, [CV-2013-2962-CV] issued and subsequently served upon Yvette Kane.

Following service of the writ, on or about June 7, 2013 [Appellee] AUSA Mark E. Morrison caused the state court writ to be removed to the Middle District Court, and docketed as 1:13-cv-01531. Thereafter it was designated to Judge Timothy J. Savage of the Eastern District Court, by this Circuit's Chief Judge, Theodore A. McKee. On August 27, 2013 Judge Savage remanded 1531 back to state court, for lack of removal jurisdiction. This is the law of the case.

Following remand, on or about October 22, 2013 Conklin, by and through his friend and then- attorney, Don Bailey filed a Bivens complaint, (02618) for violations of Conklin's rights incurred from the moment of the removal, up through the August 27, 2013 remand.

Nigh concurrently, on or about October 23, 2013 Conklin received a

ten day notice of default/non pros from AUSA Morrison. Because [as

later admitted] AUSA Morrison had never "served" the state issued Rule

to File Complaint on Conklin, and the fact that the Savage Court had

already determined in 1531 that there was no jurisdictional basis for

removal, and thus, no authority for Morrison to act on behalf of Kane,

Conklin filed an emergency motion in state court, seeking sanctions for

violations of Conklin's rights, incurred *after* the August 27, 2013

remand.

Despite clear evidence the Bivens Complaint was directly, albeit,

solely related to the state writ [2962] and its subsequent unlawful

removal at 1531, on or about November 25, 2013 this Court Chief Judge

designated the Bivens action, not to Judge Savage as it should have gone,

but to Judge Juan R. Sanchez.

Equally, on November 25, 2013 state court Judge Scott A. Evans issued

an order for a hearing on Conklin's emergency motion to be held on

December 9, 2013. On December 6, 2013 AUSA Butler removed

Conklin's emergency motion proceeding to the District Court. The

removal cover sheet clearly notes the related nature of the cases. This was

docketed as 1:13-cv-03058 and later, also designated Judge Sanchez.

Virtually everything pled by the appellees in both 02618 and 03058 repeatedly refer and/or otherwise rely upon 1531 – a case already decided by Judge Savage on August 27, 2013. Moreover, it is facially-glaring that the foregoing cases are ever-more inexplicably intertwined as evidence by Judge Sanchez's two September 5, 2014 orders, memorandum and prolixic footnotes; all of which frequently refer to and/or rely upon, 1531; replete with erroneous interpretations and bald assumptions as to defy separation.

## V. STATEMENT OF THE CASE

### A. Relevant Procedural History

On or about April 4, 2013 pursuant to Pa.R.Civ.P. 1007[2], Conklin commenced an action in state, via a writ of summons ("writ") that was docketed as CV-2013-2962-CV. The foregoing writ named Yvette Kane, only. App. 57-59. This writ was subsequently re-issued and served.

On or about June 7, 2013 [Appellee] AUSA Mark E. Morrison, ("Morrison") by and through the United States Attorney's Office for the Middle District of Pennsylvania removed the state-issued writ to federal court. The removal re-casts the defendant as the "United States of America". This removal was thereafter docketed under 1:13-cv-01531.App. 63-71a.

---

[2] Pa.R.Civ.P 1007 provides, "An action may be commenced by filing with the prothonotary (1) a praecipe for a writ of summons, or (2) a complaint."

On Monday July 8, 2013 Conklin timely filed a Motion for Remand[3]

arguing, *inter alia*, lack of jurisdiction. App. 159/Doc. 4. On July 13, 2013

Conklin mailed a safe harbor notice to Morrison, demanding he "*promptly*

*withdraw..removal*," informing him, "*there exists no jurisdictional basis for*

*having removed my writ..*" App. 141. On date same, Conklin mailed to this

Court's Chief Judge, Theodore A. McKee ("McKee") a safe harbor notice,

equally demanding that Conklin's writ should be remanded.

On or about July 25, 2013 Morrison filed a brief in response to

Conklin's remand. App. 158-159. On August 27, 2013 the Hon. Timothy J.

Savage issued a memorandum and order in 1531, remanding the removal

back to state court, for lack of removal jurisdiction. App. 160-162. Notably,

though pursuant to The Removal clarification Act of 2011, which lifted the

bar of reviewability for actions under § 1442, appellees neither filed an

appeal or even asked for reconsideration of Judge Savage's order, either of

which was available to them.

On or about September 16, 2013 Morrison, on behalf of Yvette Kane,

filed a praecipe in state court [under 2962] for and subsequently obtained a

Rule to File a Complaint. App. 250-252

---

[3] Conklin's remand motion was timely as the 30th day to file for remand fell on a Sunday
(July 8th).

On or about October 23, 2013 Conklin, by and through his friend and attorney, Don Bailey, filed a Bivens Complaint in the Middle District Court, that was thereafter docketed under 1:13-cv-02618. App. 35-72a. On October 23, 2013 Conklin received in the mail from Morrison, a Ten Day Notice of Default/non pros – for failure to file a complaint. App. 143-144

On October 31, 2013 Conklin filed in state court [under 2962] an emergency motion for sanctions and application for stay. App. 125-145. On or about November 14, 2013 Morrison withdrew his appearance on state court on behalf of Yvette Kane, [App. 253-254] and Thomas B. Schmidt III and Tucker Hull of Pepper Hamilton, LLP entered their appearances on behalf of Kane. App. 255-256

On November 19, 2013 Kane caused to be mailed the state court issued Rule to File a Complaint on Conklin, using, the exact same Rule as obtained by Morrison, dated September 18, 2013. App. 257-259.

On November 25, 2013 Dauphin County Judge, Scott A. Evans, issued an order, scheduling a hearing on Conklin's emergency motion for December 9, 2013. App. 260. The foregoing order states:

> And NOW, this 25th day of November, 2013, upon consideration of Plaintiff' Emergency Motion for Sanctions With Request for Hearing/Discovery, it is hereby ORDERED that a hearing in this matter is scheduled for December 9, 2013 at 11:00a.m. in Courtroom No. 2

On November 25, 2013 Chief Judge McKee, by designation, assigned

Conklin's Bivens Complaint (02618) to Eastern District Judge, Juan R.

Sanchez. On December 4, 2013 Appellee Kane filed a state court motion to

quash Conklin's emergency motion, with additional request for oral

argument. On or about December 6, 2013 Judge Evans granted Kane's

motion to be heard in oral argument on her motion to quash on December 9,

2013. App. 261.

On December 6, 2013 at 4:28PM AUSA Butler filed a notice of

removal with the state court, pursuant to 28 U.S.C. §§ 1442(a)(1),

1442(d)(1) and 1446. On January 6, 2014 Conklin timely filed a motion for

remand. App.280-288. Conklin timely brief in support of remand on January

22, 2014[4]. On January 17, 2014 Morrison filed a response in opposition to

Conklin's remand. App. 289-298. On February 4, 2014 Kane filed her

opposition to remand. App. 299-305 On March 10, 2014 Conklin filed a

reply to Morrison's response in opposition to remand. App. 306-318

On August 13, 2014 Conklin filed a motion to recuse/disqualify Judge

Sanchez and Chief Judge McKee. App. 113-124. On August 25, 2014

Conklin received a telephone call from AUSA Kate Mershimer, concerning

a "teleconference" that was scheduled by Judge Sanchez for August 26,

---

[4] January 20, 2014 was a National Holiday, and the following day, January 21st, the
District Court was closed due to bad weather.

2014. App. 319. On August 26, 2014 Conklin attended the "teleconference" under protest.

On August 29, 2014, Conklin filed his letter brief, under protest, with proof of mailing to Judge Sanchez. App. 227-230. Conversely, counsel for Kane and Morrison, separately filed their letter briefs, but never served Conklin with either. App.

On September 5, 2014 Judge Sanchez entered two orders which so inexplicably intertwined both 02618 (Bivens) and 03058 (2nd removal) as to render than separately indistinguishable. On or about September 9, 2014 Conklin received mail involving a prisoner's filing being returned by Judge Conaboy in a case docketed as 3:cv-13-2224.

On October 3, 2014 Conklin filed concurrently, two separate appeals per the District Court's orders in 02618 and 03058. On October 7, 2014 Conklin mailed a certified letter with affidavit in support to the Clerk for the District Court, Maria Elkins, concerning, *inter alia*, failure to be noticed, failing to docket Conklin's filings (including his August 29, 2014 tele-conference-letter brief, etc.) App. 326-334.

On mail dated October 17, 2014 the District Court's clerk office responded to Conklin's certified mail. App. 233-234. On mail dated October 16, 2014 Conklin received notice from this Court, concerning [without

11

further explanation] a *"possible dismissal due to a jurisdictional defect."*
App. 231.  On November 7, 2014 Conklin personally filed with this Court's
Clerk's office, his opposition to dismiss Conklin's appeal. App. 219-226.

On January 5, 2015 Conklin filed his brief in 14-4105 but due to a
snafu, couldn't file his appendix until the next day.

On April 10, 2015 Conklin sent a certified letter to the Department of
Justice ("DOJ") concerning, *inter alia*, a host of irregularities occurring with
Conklin's cases, including the fact that more than five months had accrued
since Conklin filed his opposition to dismissal for jurisdictional defect, and
still, despite repeated inquiries, Conklin was still not able to brief 14-4106.
Conklin copied the chairman(s) and ranking member(s) of both the House
and Senate Judiciary Committees. App. 357-365.

On April 16, 2015 received return receipt of his letter to the DOJ, and
within five days thereof, on April 21, 2015 Conklin received notice from this
Court's Clerk that, whilst no jurisdictional determination had been made,
Conklin would get a briefing schedule. App. 366.

On June 22, 2015 Conklin was notified (with less than 10 days notice)
that on July 6, 2015 Conklin's appeal in 14-4105 would be submitted to a
panel, consisting of Chagares, Jordan and Cowen. App. 392.

On July 5, 2015 Conklin caused to be filed with this Court a motion to be heard en banc. App 393-409. That motion was summarily denied in short shrift by Chief McKee, presumably after review, as required, by all other active judges of this circuit. App. 410-411.

## B. Relevant Factual History

On April 4, 2013 Conklin filed for and received a state court issued writ of summons against Yvette Kane, only – at no time then or since has Conklin ever referred to Kane as a judge, or, contrary to the Sanchez Court, had Conklin ever sued her before. Nonetheless, AUSA Morrison, under the supervision of the United States Attorney's office continued to act.

Following Judge Savage's August 27, 2013 remand, for lack of removal jurisdiction, Morrison continued to act, under color of law, on behalf of Kane, by first going into state court and obtaining a Rule to File a Complaint, even though Judge Savage was quite clear and succinct that the district court did not have jurisdiction. Notably, the August 27, 2013 remand order was not certified back to the state court. Despite all assertions to the contrary by both appellees and the Sanchez Court, if Kane/Morrison thought their actions were justified, why didn't they appeal or even ask for reconsideration; why was it necessary for Kane to even obtain private

counsel? Why couldn't AUSA Butler have represented them both? This appears at least a tacit admission against interests.

VI.    SUMMARY OF ARGUMENT

This appeal concerns the unbridled wield of power by certain federal officials, and their efforts, with the help of others in this circuit to cover-up the series of wrongs done to Conklin. This is all the more self-evident following the August 27, 2013 remand for lack of removal jurisdiction, whereby appellees, using their power and influence, elicited help in a continuing and concerted effort to further egregiously abuse Conklin's rights.

Judge Savage's memorandum and order are unequivocally clear, and represent the law of the case. Nonetheless, following remand, Morrison, in nefarious fashion, went into state court to obtain a rule to file a complaint, that Morrison later admitted, was never served on Conklin.

However, knowing he had not served Morrison on behalf of Kane attempted to obtain a non pros against Conklin. By virtue of Judge Savage's order, citing no jurisdiction, Morrison had no authority to act on her behalf, as his authority is strictly construed to representing the interests of the United States. Nonetheless, in an attempt to cover, appellees and the Sanchez Court rely heavily on the first removal, which was already decided

– something that is wholly untenable given the actual facts and circumstances in this case.

Conklin finds the Trial Court's orders, memoranda, and procedures not only confusing and quite ambiguous but in many ways legally unsupportable. There could not be a clearer case of a lack of jurisdiction and defect in removal, [save for 1531] by the defendant/appellees as exists in 03058.

However, Judge Sanchez interprets Judge Savage's opinion to say things Judge Savage didn't say. If Judge Savage's opinion stands, as it should, then Yvette Kane's efforts to more or less climb out of a legal hole on a slant, comes to nothing.

The Trial Court clearly and repeatedly engages in speculation when it "baldly concludes", without a single supporting fact, that Conklin is suing Kane in her official capacity. This would mean that Judge Savage is not merely wrong but that he's outright incompetent. That is an absurd proposition and is clearly not correct. But the law, as Judge Savage very precisely and correctly pointed out reports Judge Savage, not Judge Sanchez.

All this in avoidance of the actual facts underlying this case, i.e., the 03058 removal was jurisdictional unfounded and procedurally untimely.

## VII.  STANDARD OF REVIEW

An issue of lack of jurisdiction can be raised at any time, even on appeal. See *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Lack of jursidiction presents a legal question of whether there ever was federal jurisdiction, at, and/or during the time of removal; and, this Court is empowered with appellate jurisdiction to review that legal question, *de novo*. Whether an incorrect legal standard has been used is reviewed de novo." *Hayes v. Wal-Mart Stores, Inc.,* 725 F.3d 349, 354 (3d Cir. 2013) (citation omitted).

The Trial Court's bald legal conclusions can receive no deference, and this court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1886) (cited with approval in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In fact this Court has a duty to do the opposite and to recognize the law of the case of the principles of res judicata as reflected in Judge Savage's opinion.

VIII.  ARGUMENT

## A. <u>Sanchez Court did not have Jurisdiction to Entertain 1:13-cv-03058</u>.

Conklin submits as a pre-requisite novel issue, that Judge Sanchez was never properly vested with jurisdiction over the second removal, docketed as 1:13-cv-03058.

### a. **Remand of 1:13-cv-01531 was never certified back to State Court**.

On August 27, 2013 case 1:13-cv-01531 was properly decided by Judge Savage for lack of removal jurisdiction, and thus represents the law of the case. However, whilst a transfer of at least some records back to state court did occur, the order of remand was never certified by the district clerk back to the state court. App. 238. Following the second removal, Conklin timely sought remand for lack of jurisdiction and procedural defect.

In removal cases, lack of jurisdiction, (as well as defect in removal) come under the statutory ambit of 28 U.S.C. § 1447(c) which provides, in relevant part:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded... A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case. 28 U.S.C. § 1447(c) (emphasis added)

A certified copy of the order of remand is the "key jurisdictional event" because the remand order is not self-executing. *Trans Penn Wax Corp. v. McCandless*, 50 F. 3d 217, 225 (3d Cir. 1995)

And so the argument goes, because a certified copy of the order of remand had not been issued by the district court clerk back to state court, the state court, remained powerless to proceed. App. 238. Certainly, the Sanchez Court understood this when it caused a certified copy of the order of remand in 03058 to be sent back to state court.

Thus, the November 25, 2013 state court order scheduling a hearing on Conklin's emergency motion for December 9, 2013 lacked jurisdiction. Accordingly, the December 6, 2013 removal of a proceeding, based on that scheduled hearing, cannot serve as the basis for removal. "*The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction.*" *Lambert Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377, 382 (1922)

Thus, the threshold determination is whether, prior to removal, the state court had jurisdiction of the subject matter or the parties. Conklin contends, because no certified copy of the remand order was ever received by the state court from the district court, the state court simply could not entertain a hearing, and consequently, removal jurisdiction was lacking.

Accordingly, because removal was, at best, premature, whatever actions,

determinations, and alike subsequently made by the Sanchez Court are void,

*ab initio* – the Sanchez court did not have jurisdiction over the removal,

because, in the first instance, the state court had not obtained it.

### b. 28 U.S.C. § 1442(a) is a Pure Jurisdictional Statute

AUSA Butler removed the state court "proceeding" pursuant to 28

U.S.C. § 1442(a)(1) – section 1442(a) is a pure jurisdictional statute. See,

e.g., *Mesa v. California*, 488 U.S. 121 (1989) ("Section 1442(a), in our

view, is a pure jurisdictional statute." Id at 136.

This Circuit has determined jurisdiction under § 1442(a)(1) requires:

A defendant…must establish that (1) it is a "person" within the meaning of
the statute; (2) the plaintiff's claims are based upon the defendant's conduct
"acting under" a federal office; (3) it raises a colorable federal defense; and
(4) there is a casual nexus between the claims and the conduct performed
under color of a federal office.

*Feidt v. Owens Corning Fiberglass Corp.*, 153 F. 3d 124, 127 (3d Cir.

1998) (citing *Mesa v. California*, 489 U.S. 121, 129, 109 S.Ct. 959, 965,

103 L.Ed 2d 99 (1989); *Willingham v. Morgan*, 395 U.S. 402, 409, 89

S.Ct. 1813, 1817, 23 L.Ed 2d 396 (1969))

Morrison cannot demonstrate it was complying with a federal duty.

Morrison's federal duty is to represent the interests of the United States,

only. And per Judge Savage's August 27, 2013 memorandum and order,

because the District Court [in 1531] lacked removal jurisdiction per the federal removal statute, consequently, Morrison was without jurisdiction, as the interests of the United States were not implicated.

As noted in *Jefferson County v. Acker*, 527 U.S. 423 (1999) "to qualify for removal, an officer of the federal courts must both raise a colorable federal defense, see *Mesa v. California*, 489 U.S. 121, 139 (1989) and establish the suit is "for a[n] act under color of office, " 28 U.S.C. § 1442(a)(1) (emphasis added)

To satisfy the latter requirement, the officer must show a nexus, a 'causal connection' between the charged conduct and asserted official authority." *Willingham v. Morgan*, 395 U.S. 402, 409 (1969) (quoting *Maryland v. Soper (No 1)*, 270 U.S. 9, 33 (1926)). Id at 431

"There must be a causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the prosecution of him, for whatever offense, has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and he must by direct averment exclude the possibility that it was based on acts or conduct of his not justified by his federal duty.." *Mesa Supra.*, at 132. Morrison did not because he could not make a "direct averment [as to]

20

exclude the possibility that it was based on acts or conduct of his not justified by his federal duty."

What is the charged conduct? That following remand of the first removal for lack of jurisdiction, AUSA Morrison continued on, ostensibly under color of federal authority in proceeding in state court to obtain a rule to file a complaint, and then abused process by willfully and intentionally failing to serve that rule in an attempt to obtain a non pros on behalf of a private citizen. There is nothing, absolutely nothing to suggest otherwise.

Virtually everything focused on by the Kane and Morrison, as well as the District Court are squarely premised on a first removal (1531), which was decided/remanded by then-designate Judge, Timothy J. Savage on August 27, 2013, for lack of removal jurisdiction. That is the law of the case.

It is axiomatic, the issue of [lack of] jurisdiction can be raised at any time, even on appeal. See *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). For purposes of the instant appeal, this issue presents a legal question of whether there ever was federal jurisdiction, at, and/or during the time of removal; and, this Court is empowered with appellate jurisdiction to review that legal question, *de novo*.

xxx

21

## B. <u>Sanchez Court erred as a Matter of Law</u>

The Sanchez Court's decisions (in both 03058 and 02618) are so intermixed as to render them, inseparable and incomprehensible as to how any such orders. Memorandum and prolixic footnotes could have ever emanated out of a Court.

With respect to the instant matter, (03058/14-4106) Judge Sanchez's decision is literally riddled with bald assumptions, beliefs, and erroneous conclusions, as to cry for reversal of Judge Sanchez's order. Notably, virtually everything raised by Morrison and Kane and, in particular, the Sanchez Court, concerning sanctions involves the removal of Conklin's writ which was subsequently decided by the Savage Court in 1531 in Conklin's favor. That decision, represents the law of the case.

Accordingly, any determination of the [improvidently] removed state court emergency motion for sanctions that both the appellees and the Sanchez Court so heavily rely upon, should have been heard by Judge Savage, who had already decided the case. Even after remand, in addition to whether the Savage Court would still have had jurisdiction, because no certified copy of the order of remand had issued, Judge Savage still would have had jurisdiction to hear issues involving sanctions, separate and apart from remand of the case he had properly adjudicated.

See, e.g., *Lazorko v. Pennsylvania Hosp.*, 237 F. 3d 242 (3dCir. 2000) ("*Although the District Court relinquished jurisdiction over this case when it either dismissed or remanded all the claims before it, it still had jurisdiction to order sanctions.... even if the court is subsequently determined to have lacked subject matter jurisdiciton*") citing, *Willy v. Coastal Corp.*, 503 U.S. 131, 139, 112 S.Ct. 1076, 117, L.Ed. 2d (1992); *In re Jaritz Industries, Ltd.*, 151 F. 3d 93, 96 (3d Cir. 1998) relying on *Willy*)

### a. Assumptions, Beliefs and Erroneous Conclusion

Because Sanchez's decision is so riddled, and at times, incomprehensible, it is nigh impossible for Conklin to address each and every instance.

That being said: In his memorandum, Judge Sanchez begins his analysis by stating in pertinent parts that:

> "The underlying sanctions proceeding arises out of a lawsuit Conklin initiated, a federal judge sitting in the Middle District of Pennsylvania, via a writ of summons. Judge Kane's attorney at the time. Assistant United States Attorney (AUSA) Mark E. Morrison, removed the case the suit to federal court for, but the case was later remanded because **removal was premature**. Following remand, **Conklin moved for sanctions** against Judge Kane and Morrison for, **among other things, their role in removing the case**" (emphasis added)

Contrary to the above, the state court emergency motion for sanctions does not arise out of a lawsuit Conklin initiated in state court (writ); nor, does said motion seek sanctions for appellees role in removing the case. Any honest reading of the emergency motion would clearly show it was for acts committed by Kane et al., *after* the August 27, 2013 remand by Judge Savage for lack of removal jurisdiction. One need only look at the prayer for relief to understand this.

Moreover, Sanchez's stating that jurisdiction was "premature" is an admission against interests, as "premature jurisdiction" is to admit, there was no jurisdiction at all. Premature jurisdiction is akin to a hypothetical jurisdiction, something the Supreme Court has readily rejected.

Again, the law of the case is quite clear, remand of 1531 was required, as there was no basis for removal jurisdiction. Further, once more Judge Sanchez refers to and/or relies upon the first removal (1531) that was decided in Conklin's favor.

Judge Sanchez continues with:

" Although the order setting the hearing **did not explicitly** require the production of documents or Morrison's testimony, it was the functional equivalent of such an order, given the context in which it was issued. As noted above, Conklin sought, through a hearing, testimony or documents in connection with his sanctions motion. Morrison could reasonably **infer** his testimony would be required, as assessing the propriety of issuing sanctions is often, if not always, a fact-based enterprise. Further, the motion accused Morrison of **removing the case for an improper purpose**, and thus put his conduct and his state of mind directly at issue. **For these reasons, the notice of removal is timely and the motion for remand will be denied**. [A15] (emphasis added)

First off, this does not address the fact, as raised by Conklin, that the removal was untimely [App. 306-318] an issue that only became a "*thorny and interesting*" issue with Judge Sanchez, during the August 26, 2014 teleconference – which only happened as a result of Conklin having filed a motion to recuse; secondly,

the setting of the hearing "***did not explicitly***" require the production of

documents or testimony; nor were there any subpoenas issued – all of which

is expressly contemplated by the Removal Clarification Act of 2011, with

regards to sections 1442(d)(1) or 1446(g);

Third, Conklin's motion sought a hearing for sanctions which had

nothing to do with Morrison's removal in 1531- it was about the unlawful

acts that occurred after remand; and finally, Kane filed a motion to quash

with a request for oral argument, which on December 4, 2013 was expressly

granted by the state court to be heard, ***prior*** to hearing Conklin's motion.

Kane had sought a remedy, that if, at time of oral argument were to be

granted, there would be no subsequent hearing on Conklin's motion.

Nonetheless, Sanchez opines:

First, Morrison's decision to file the notice of removal is not subject
to sanctions because it was objectively reasonable under the
circumstances and the basis for doing so was not "patently
unmeritorious or frivolous". Id. The **available facts** all show that
Conklin's **state court suit** was **most likely** filed against **Judge** Kane
in her **official capacity**. [A17] (emphasis added)

Judge Sanchez goes on to say:

For over a year, Conklin has suppressed the only remaining
**unavailable facts** that bear upon his Sanctions Motion, facts which
are entirely under his control. In light of Conklin's refusal to specify
the nature of his claims, this Court **can only logically infer** that his
lawsuit was in fact directed toward a judicial officer. [A18] (emphasis
added)

It is facially-obvious, the use of terms such as "*available facts*"…all

show Conklin's '*state court suit*' was '*most likely*' filed against "*Judge*"

Kane in her '*official capacity*'."", together with "*unavailable facts*",

"*reasonably infer*" and "*this Court can only logically infer*" is all about

Appellant's state court writ, that following its unlawful removal [1531]

which was decided in Appellant's favor – this has nothing to do with

determining the efficacy of the 3058 removal then at hand.

   Moreover, it clearly admits, erroneously, the assumption of facts

clearly without evidence. "*available/unavailable facts*", "*most likely*",

"*reasonably/logically infer*" and alike, are not facts at all, but merely bald

assertions/assumptions that have no bearing on the actual facts that were

present at the time.

   These assumptions are demonstrably noted by Smith/Morrison brief in

14-4105 [App.367-385] where, beginning on page 5 states:

> "*Believing that Conklin had filed an action against Yvette Kane in her
> role as a federal judge – because there was no information that Conklin
> had any personal dispute with Judge Kane and Conklin had previously
> sued her in her role as a federal judge – AUSA Morrison, on behalf of
> Judge Kane, removed the writ pursuant to the federal office removal
> statute, 28 U.S.C. § 1442(a)(3).*" (emphasis added)

"*Believing*" that Conklin filed his writ of summons, "*because there was*

*no information*" i.e., "actual facts", - is a bald assumption, totally lacking

any probable cause to have warranted removal.

This assumption is furthered by, "*Conklin had previously sued her*" (Kane) – a clear and unequivocal prevarication of facts, sans any evidence to support it. The fact is, prior to his writ, Conklin had never sued Kane in any capacity. The foregoing continues with "*AUSA Morrison, on behalf of Judge Kane, removed the writ pursuant to...28 U.S.C. § 1442(a)(3)*"

Notably, is the fact that Morrison, as AUSA, acted on behalf of a private citizen, Yvette Kane, on an assumption. Nothing on the writ remotely suggests otherwise. App. 57. Nor, was this source of this appeal or the first removal performed under section 1442(a)(3).

Morrison further illustrates these "assumptions" and the fact he had to know better, per claims in his declaration, (A150-152) that he:

> "*is currently employed by the United States Department of Justice...as an Assistant United States Attorney, Chief of the Civil Division.*" (A150,¶1); "*The United States Attorney, Peter J. Smith, has has delegated authority to me in assigning all civil matters... In particular, I had authority to represent the Honorable Yvette Kane in matter filed by Plaintiff...*" (A150,¶ 2) "*Based on the information I had available to me, I believed Mr. Conklin had filed a civil action against Judge Kane in either her official or individual (Bivens) capacity.*" (A151, ¶ 3); and, "*Although no complaint was filed in Dauphin County, research revealed that a notice of removal may be filed under 28 U.S.C. § 1442 when a lawsuit is commenced.*"(A151, ¶ 5)

Again, this is about the first removal, which was decided and remanded for lack of jurisdiction. Nonetheless, As, "*Chief of the Civil Division*", presumably a position of authority in its own right, that, *inter alia*, oversees

other civil litigation(s), Morrison freely admits his removal (1531) was

solely "*based on information I had available to me*" and thus, "*I believed*",

whilst further admitting, " *Although no complaint was filed...*"*research*

*revealed...*".

This is further evidenced by statements made during the August 26,

2013 telephone conference, which provides in pertinent part(s) that:

[Court] So you still today do not – **I have no understanding
whatsoever whether your claims had anything to do with Judge Kane's
status as a federal judge**, because if it didn't then a Complaint would have
cleared that up and you have – [A103] (emphasis added)

Judge Sanchez admits he has "*no understanding whatsoever*" and

thus, no facts. This is further buttressed by the teleconference where Judge

Sanchez and Attorney Mershimer when ostensibly discussing the

nature of the hearing on the second removal state the following:

[Judge] I wanted to ask....Attorney Mershimer, why do you believe
that the state court order scheduling a hearing is an order for production of
testimony or documents? [A81]

[Mershimer] Well, the order scheduling the hearing, since the **sole
issue** was whether Attorney Morrison had **authority** to bring this –to
remove the case... Now we had an argument that the Plaintiff, Mr. Conklin,
did not have standing, in essence, to challenge the federal government
representing Judge Kane at that time, but if that was not resolved in our
favor, then Mr. Morrison was going to have to testify. [A81] (emphasis
added)

The sole issue referred to is not simply whether "Morrison had

authority to bring this-to remove the case". That clearly refers to the first

removal, which was decided. The issue is whether Morrison, could

following remand, act in an official capacity, where the interests of the

United States were not involved; and, whether he could contravene

Pennsylvania law in surreptitiously obtain a Rule to File a Complaint, and

not serve it (as later admitted) in an attempt, via abuse of process, to obtain a

non pros.

Morrison, as an attorney, is bound by the Pennsylvania Rules of

conduct and disciplinary procedure. Conklin has standing to challenge such

actions where he is subject to injury for such unlawful acts.

[Judge] But **you agree** that **the Order merely sets a hearing** and
**setting a hearing does not necessarily require or direct anyone to
produce testimony or produce documents at a hearing**.

[Mershimer] **I can seek [sic (concede?)] that point, your Honor.**
We were just taking it to the **next logical step** is that there's no way to
proceed with that hearing without testimony. [A82] (emphasis added)

Here, Judge Sanchez clearly acknowledges that the "Order merely sets a

hearing [that] does not necessarily require or direct anyone to produce

testimony or produce documents at a hearing" This is a point Mershimer

readily concedes, but then relies, albeit "assumes" in stating the "next logical

step is there is no way to proceed with that hearing without testimony."

[Judge] Right, but the –and the statute.... talks in terms of an Order
issued –even if you take a reading of Judge McLaughin's case, an order
thought (sic)—issue or thought (sic)to be enforced for a Judicial Order of

testimony of documents. <u>And the key is certainly the issue of whether the Judge's Order of November 25, 2013 is a Judicial Order for testimony of documents.</u>[A82] (emphasis added)

[Mershimer] I totally understand, Your Honor. **It is clearly not expressly such an Order**. <u>We argued that it is **implicitly** such an Order.</u> [A82] (emphasis added)

Here Mershimer concedes, " It is clearly not expressly such an Order."

Informed by Conklin's litigation history, <u>it was reasonable for Morrison to believe Conklin initiated suit against Judge Kane based on acts related to her status as a federal judge</u>. This conclusion is buttressed by <u>Conklin's steadfast refusal to **divulge any facts** related to the lawsuit</u>[writ of summons] **he filed in state court**. [A18]

Again, the Trial Court is itself, engaged in a shell game, whereby it conflates Appellant's removed state court emergency motion, the subject of the second removal, docketed at 3058, by using terms such as "***initiated suit***" [writ], and, Conklin's steadfast refusal to "***divulge any facts related to the lawsuit*** [Writ] ***he filed in state court***."; the latter of which was remanded in Appellant's favor by Judge Savage following the unlawful removal of Appellant's state court writ by Morrison on behalf of Kane.

Moreover, the Trial Court admittedly assumed facts not in evidence, by stating it was "reasonable for Morrison to **believe** Conklin initiated suit [via writ]... based on acts related to her [Kane's] status as a federal judge... buttressed by Conklin's steadfast refusal to divulge **any facts** related to the lawsuit." Conklin did not have to once they unlawfully removed it.

The Trial Court continues by stating:

For over a year, Conklin has suppressed the only remaining unavailable facts that bear upon his Sanctions Motion, facts which are entirely under his control. In light of Conklin's refusal to specify the nature of his claims, this Court **can only logically infer** that his lawsuit was in fact directed toward a judicial officer. [A18]

Once more, the Trial Court focuses on the nature of Appellant's state claims, by inference, which is not fact, nor dispositive, to the issue(s) at hand. Again, all the assumptions in the world cannot be made into facts, no matter how the Sanchez Court or the appellees wish make it. Judge Savage was quite clear in his memorandum, stating in clear relevance:

"*Mere suspicion or conjecture that the claims against the defendant arose out of acts or omissions in the course of carrying out her duties will not suffice.* " (A161) (emphasis added)

Both the appellees and the District Court have woefully failed to provide sufficient actual facts to support their reasoning's and decisions that represents anything more that mere speculations. Beliefs, assumptions, speculations or otherwise are not facts, and therefore cannot serve as a basis of law. Moreover, in reaching its decision, Sanchez DID NOT allow conklin's timely filed teleconference brief to be entered on the docket, much less be considered. Nor, was Conklin's brief even on the dcket at time of appeal, but per certified letter to the district court clerk, was subsequently retrieved from chambers and then posthumously added to the docket.

Therefore in consideration of all the foregoing, the district Court decision must be reversed.

### C. <u>Judge Sanchez Should have Recused/Disqualified</u>

28 U.S.C. 455 provides in pertinent parts that:

> (a) Any justice, judge, or magistrate of the United States **shall** disqualify himself in any proceeding in which his **impartiality might reasonably be questioned**. (emphasis added)
> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding;

Subsection (a), the provision pre-eminently at issue here, was an entirely new 'catchall' recusal provision, covering both 'interest or relationship' and 'bias and prejudice' grounds, see *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988) – but requiring them all to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal was required whenever 'impartiality might reasonably be questioned.'"

It has long been held in this Circuit that "...*public confidence in the judicial system mandates, at a minimum, the appearance of neutrality and impartiality in the administration of justice.*" *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 157, 165 (3d Cir. 1993) (emphasis added); see

also, *LaSalle National Bank v. First Connecticut Holding*, 287 F. 3d 279

(3d. Cir. 2002) (reassignment of the case ordered)

### a. August 13, 2014 Motion to Disqualify

On August 13, 2013 Conklin filed a motion to recuse/disqualify Judge

Sanchez (and Chief McKee) as it was clear Judge Sanchez was brought by

Chief McKee to help Kane et al., in fixing Conklin's cases – and fix he did.

From the moment of removal, and the highly suspect "designation" of

Judge Sanchez, and not back to Judge Savage, with each passing day it

became clearer how dark it was about to become. Nonetheless, having been

so designated, it remained the duty of District Court to at least appear to

adhere to the rules, beginning with Fed.R.Civ.P 1 and 28 U.S.C. § 471

which combined state, that the district court **shall**:

"*secure/ensure the just, speedy and inexpensive determination of every
civil action or proceeding/resolution of civil disputes*" (edited for
import/emphasis added)

In stark contrast, it took then-designate Judge, Timothy J. Savage (1531)

only 81 days from the date of the initial removal, to properly determine,

*inter alia*, that the federal court did not have jurisdiction over a previous

removal; hence, no authority to remove.

Following Conklin's March 10, 2014 Reply in support of remand, it

became abundantly clear that, despite the fact a federal officer, for purposes

of removal, may enjoy multiple bites of the apple, this apple was rotten to its core, having failed to timely pick the fruit of removal under any statutory theory thus relied upon.

Moreover, despite AUSA Butler's liberal sophistry, the Dec. 6th removal does not, <u>because it cannot</u>, as otherwise required, "***<u>by direct averment</u> <u>exclude the possibility that</u>*** [Morrison's] ***action[s] was/were based on <u>acts</u> <u>or conduct not justified by his federal duty</u>***." (emphasis added)

How could he? The August 27, 2013 remand made it quite clear: the federal court did not have jurisdiction; *ergo*, Morrison lacked lawful authority as a AUSA to act on behalf of a private defendant; *a fortiori*, AUSA Morrison all the more lacked even a scintilla of lawful authority by continuing to act, following remand, on behalf of Yvette Kane, *i.e.*, "***acts or conduct <u>not justified</u> by his federal duty***."

So what possibly is the excuse for this inexcusable delay, in both cases, no less? Though clearly in his motion, no consideration, *i.e.* excuse was proffered towards the extraordinary delay in Plaintiff's federal Bivens complaint, it appeared quite clear to Conklin in both cases, this is all about a confederacy to cover-up wrong doings.

The Sanchez Court's inexcusable delay, up to the time of Conklin's recusal motion, was clearly intentional, as further evidenced by the fact that

the Sanchez Court has willfully and deliberately obviated its duty to either schedule a Rule 16 pretrial conference, or even more importantly, utterly derelict in failing to issue a scheduling order as absolutely required.

Indeed, the purpose(s) of a Rule 16(a) pre-trial conference, include, but are not limited to: (1) *expediting disposition of the action*; (2) *establishing early and continuing control so the case will not be protracted because of lack of management*..."(emphasis added) See also, MDLR 16.1, "*Unless otherwise ordered.. there shall be a minimum of two (2) court conferences in every civil action..*"

More importantly, the dereliction of the Sanchez Court's abject failure to issue a scheduling order as required, speaks for itself. Rule 16(b)(2) mandates that the Court *must issue* a scheduling order, **no later than 120 days** from the date any defendant is served, or within 90 days from the date any defendant has appeared. (see, MDLR16.4)

Additionally, Judge Sanchez woefully failed to provide for a Rule 26(f) conference, thus impeding discovery. In fact, surely Judge Conner instructed this Court, that per local rule, all discovery efforts pertaining to 02168 or 03058 would be irreparably lost if Judge Sanchez could simply forestall its duty to move forward.

Just as Conklin's state court motion was removed in hopes it never saw

the light of day via Judge Sanchez's "designation", so too, Judge Sanchez

was specifically brought in to make sure the Bivens complaint remains

evermore in darkness. Rule 26(C) provides in pertinent that:

A party must make initial disclosures *at or within 14 days after the parties'*
*Rule 26(f) conference* *unless a different time is set by stipulation or court*
*order, or unless a party objects during the conference* that initial
disclosures are not appropriate in this action and states the objection in the
proposed discovery plan. *In ruling on the objection, the court must*
*determine what disclosures, if any, are to be made and must set the time*
*for disclosure*" (emphasis added)

Of course, that is exactly what Judge Sanchez was sent in to do; obstruct

justice; and happily so, as certain judges have long held a seething dislike

for Don Bailey; and because of my close association, such has extended to

Conklin. No question, once Don Bailey entered into the scene, great efforts

were taken to fix the case, beginning with the designation of Judge Sanchez,

who has a long history of fixing cases where Don Bailey is involved.

Notably, though the docket does not reflect this, the Bivens action was

initially given to Judge William Caldwell of the Middle District to preside

over, as Conklin later found on Justia.com.

The fact it was designated on November 25, 2013 to Sanchez is telling,

particularly since this is the same date, after two previous state judges were

to preside over Conklin's emergency motion, suddenly Judge Evans emerges

739 F. 2d 671, 676 (1st Cir. 1984) (same); *Potashnick v. Port city Constr.*
*Co.*, 609 F. 2d 1101, 1111 (5th Cir. 1980)

As the appendices make clear, Conklin never received notice from the
District Court concerning the so-called teleconference. Instead, Conklin gets
a call from AUSA Mershimer the day before, whilst Conklin was attempting
to complete his brief in support of his motion to recuse. Meanwhile, Counsel
for Kane contacts Don Bailey.

Though, when asked, neither had a problem with Don Bailey attending
the teleconference, as the transcripts reveal, that was fallacious on both
parts. More importantly, nor was the so-called teleconference for the
purposes it was purported to be, i.e. "*for the purposes of scheduling a*
*hearing on all outstanding motions.*" It was both a sham and a trap, borne of
ex parte communications to separate Conklin from Don Bailey in an attempt
to slam Conklin.

Moreover, though under protest, Conklin filed a letter brief, that brief
mysteriously was omitted from the docket, whilst simultaneously, neither
appellee counsels copied Conklin on their letter briefs. The Sanchez Court
stated more than once (see transcripts) that Conklin's March 10, 2014 Reply
brief, presented an "interesting and thorny" issue. If it was such an

interesting and thorny issue, why did the Sanchez Court sit on it until after

Conklin filed his motion for recusal?

The fact that Conklin's letter brief does not appear on the docket before

Judge Sanchez entered his September 5, 2014 orders, is all the more telling,

as the letter brief is clearly the other side of the March 10, 2014 reply brief

coin.

In addition, instead of getting notice of the entry of the transcripts unto

the docket, Conklin gets mail meant for a state prisoner, who apparently is

incarcerated for sex-related crimes. Conklin firmly believes that was a

message being sent to him as to publicly attack his character. It wasn't until

Conklin was forced to send a certified letter to the District Court that

Conklin was able to attempt to correct what had occurred. However, the

damage had already been done.

Though there is so much more, Conklin concludes with the fact that

though the teleconference was ostensibly about matters under 03058, Judge

Sanchez not only rushed to decide the second removal, but the Bivens

complaint that Don Bailey filed for Conklin. He did so, based on the fact

that Conklin sought his recusal that precipitated Judge Sanchez in concert

with appellees having an improperly noticed, and deceptive teleconference

and then, without Conklin having his counsel present, deciding both the

bivens and the second removal quickly, without a scintilla of factual evidence to support, in rendering his rush for judgment. And, in doing so, he so inexplicably intermixed both cases as to make any separation a difficult task, to say the least. Certainly, both cases should be heard together, en banc.

Which brings me to this: Conklin having appealed both the instant matter and the bivens dismissal to this Court concurrently, this Court, for whatever as yet explained reason, chose to forestall the instant matter for an undisclosed "possible dismissal due to a jurisdictional defect." Conklin complied with the Clerks directive, by filing a motion in opposition, that, again, for reasons yet explained, languished on and on. Conklin spoke with his case manager on numerous occasions, as well as, in writing, to the Clerk's office – the latter always about submitting to a merits panel, something that never occurred.

It was until Conklin wrote to the DOJ and copied the chairman and ranking members of the House and Senate Judiciary Committees, that suddenly, within five days Conklin could file a brief. However, once again, damage was already irreparably done. Meanwhile, once more Conklin does not get notice or copies of certain filings from the appellees, or even some from the clerk's office. Conklin is forced to learn things well after the fact, where again, damage is already done. And, then there is the issue of undue

preference being afforded the other side in certain matters, that Conklin is forced to try and get an explanation about.

Now, given this and more as can be found in the record, what would a reasonable man on the streets, having all the facts and circumstances to consider – what would he or she think???

IX.    CONCLUSION

Wherefore, in consideration of all the foregoing, Conklin respectfully requests that this Court grant all manner of relief consistent herewith.


Respectfully Submitted,


Stephen G. Conklin
c/o 22 Mairdale Street
Pittsburgh, PA. 15214

v.

## CERTIFICATE OF SERVICE

I, Stephen G. Conklin, Appellant above, do hereby certify this 10th

day of July, 2015 that I caused to be served an original and four true and

correct copies of my principal brief, and Appendix, Vol. I and II, upon the

Office of the Clerk of the United States Court of Appeals for the Third

Circuit via Fedex, postage prepaid with proof; and, a true and correct copy

of my principal brief and appendix I and II, separately mailed via First Class

U.S. Mail, postage prepaid upon all other parties as addressed below.

Thomas Schmidt III, Esq. *Personal Service Courier*
c/o Pepper Hamilton, LLP
100 Market Street, Suite 200
P.O. Box 1181
Harrisburg, Pa. 17108-1181

AUSA Michael Butler *Personal Service Courier*
Ronald Reagan Fed. Bldg.,
228 Walnut Street, Suite 220
Harrisburg, Pa. 17108

Clerk of Court
Third Circuit Court of Appeals
21400 United States Courthouse
601 Market Street
Philadelphia, PA. 19106

By: _____
Stephen G. Conklin
c/o 22 Mairdale Street
Pittsburgh, Pa. 15214